IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LILIA E. LAWLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-09-CV-252-KC |
| | § | |
| MIRATEK CORP., et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

On this day, the Court came to consider Plaintiff Lilia E. Lawler's "Response to Defendants' Motion for Removal," which the Court has construed as a Motion to Remand ("Mot. to Remand") (Doc. No. 8), and Defendants' "Response to Plaintiff's Motion to Remand" ("Defs.' Resp.") (Doc. No. 10). The Court also considered the supplemental briefs, which were filed pursuant to an Order of this Court dated January 25, 2010 ("Jan. 2010 Order") (Doc. No. 46). *See* Pl's Supp'l Brief (Doc. No. 47); Defs.' Supp'l Brief (Doc No. 48). For the reasons set forth herein, the Court finds that the Motion to Remand should be **GRANTED** in part and **DENIED** in part.

I.  BACKGROUND

Defendants removed this employment discrimination case from state court to this Court on July 6, 2009, asserting that removal was proper on the basis of federal enclave jurisdiction, which is a type of federal question jurisdiction. *See* Defs.' Notice of Removal ¶¶ 3-8 (citing 28 U.S.C. § 1331 and *Mater v. Holley*, 200 F.2d 124-25 (5th Cir. 1953)) (Doc. No. 1). Lawler

contests the availability and propriety of these grounds for jurisdiction. *See generally* Mot. to Remand. Defendants respond by arguing that the law of federal enclave jurisdiction provides federal court jurisdiction over state-law claims that arise from events occurring in federal enclaves, and averring that the events underlying Lawler's state-law employment and defamation claims "occurred solely on Fort Bliss." Defs.' Resp. 2-3. Defendants make similar assertions in their Notice of Removal. *See* Notice of Removal ¶¶ 6 ("[T]he events giving rise to Plaintiff's lawsuit occurred on Fort Bliss Military Base."), 7 ("Plaintiff alleges that she was subject to a hostile work environment while working at Fort Bliss . . . .").[1] Defendants' cite to Lawler's state court Original Petition[2] as support for these factual claims. *See* Defs.' Resp. 3. The Court previously concluded, however, that Lawler's Original Petition, while suggesting that the events giving rise to this lawsuit occurred on Fort Bliss, was insufficient to sustain federal enclave jurisdiction. *See* Jan. 2010 Order. The Court therefore ordered supplemental briefing on the subject, to settle this jurisdictional question. *Id.*; *see also* Pl's Supp'l Brief, Defs.' Supp'l Brief.

## II. DISCUSSION

### A. Standards

---

[1] Defendants also argued that this Court has jurisdiction over this case under the Federal Tort Claims Act ("FTCA"), because federal employees acting within the scope of their employment were among those named as Defendants in this case, and the United States certified their status and moved to be substituted in their stead. *See* Defs.' Resp. 4 (citing 28 U.S.C. § 2679(d)(1)). This jurisdictional ground is no longer available, however, as the Court recently dismissed the United States from this case, thus removing the conditions for FTCA jurisdiction. *See* Order, January 20, 2010 (Doc. No. 45).

[2] This document was filed as an attachment to the Notice of Removal. It may be found starting on the ninth page of that filing. Any references to it will use its internal pagination.

### 1. Removal and remand

A defendant may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction. *See* 28 U.S.C. § 1441(a). The removing party must show that federal jurisdiction exists and that removal is proper. *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). In evaluating jurisdiction, "any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Id.* The district court is required to remand a case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction over the case. 28 U.S.C. § 1447(c). Where the jurisdiction of the court is challenged, the burden is on the party seeking to preserve the district court's removal jurisdiction. *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921-22 (5th Cir. 1997); *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996). "Under the well-pleaded complaint rule . . . a movant may not remove a case to federal court unless the plaintiff's complaint establishes that the cause of action arises under federal law. Courts will, however, typically look beyond the face of the complaint to determine whether removal is proper." *Bear Stearns*, 128 F.3d at 922; *see also Blahnik v. BASF Corp.*, No. 06-CV-410, 2006 WL 2850113, at *4 (S.D. Tex. Oct. 3, 2006) (using interrogatory responses entered into evidence, as well as the pleadings, to settle the question of the availability of federal enclave jurisdiction).

### 2. Federal enclave jurisdiction

Federal enclave jurisdiction is a subspecies of federal question jurisdiction, which is a form of subject matter jurisdiction vested in federal district courts by 28 U.S.C. § 1331. *See Blahnik*, 2006 WL 2850113, at *3. Because Congress has exclusive legislative jurisdiction over

federal enclaves – pieces of territory carved out of states for federal use and control – courts have reasoned that federal courts must also have subject matter jurisdiction over controversies that arise on such enclaves. *See* U.S. Const., article I, § 8, cl. 17 (permitting the federal government to set up enclaves within states, if the relevant state legislature grants consent); *see also Mater v. Holley*, 200 F.2d 123, 124-25 (5th Cir. 1953) (finding federal enclave jurisdiction over a common law tort claim); *see also Blahnik*, 2006 WL 2850113, at *3. Thus, federal courts have at least concurrent original jurisdiction over personal injury and other tort claims that arise on federal enclaves. *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006); *see also Mater*, 200 F.2d at 123-24 (observing that state court jurisdiction over tort claims arising out of events taking place on federal enclaves has been permitted by the Supreme Court, but that federal courts also have jurisdiction over such cases).

B. **Only Some of Lawler's Tort Claims Arise on a Federal Enclave**

Miratek, the company which employed Lawler, is an El Paso firm with offices near, but outside of, the Fort Bliss federal enclave.[3] *See* Decl. of Lilia Lawler ¶ 4 ("Lawler Decl.")[4] (stating that Miratek's headquarters is at 8201 Lockheed, El Paso, Texas, which is a building not on Fort Bliss). Miratek's senior executives worked at that location, its various personnel-management and administrative tasks were performed there, and Lawler spent some time there in relation to those tasks. *Id.* ¶¶ 4, 6-8. All the same, Lawler's day-to-day duties involved the management and oversight of a hazardous waste facility on the grounds of Fort Bliss and

---

[3] No party contests the federal enclave status of Fort Bliss. *See United States v. Prejean*, 494 F.2d 495, 496 (5th Cir. 1974) (holding that Fort Bliss is a federal enclave).

[4] This document is appended to Lawler's Supplemental Brief (Doc. No. 47).

generally required her to be physically present at that location for those purposes. *See* Aff. of Irma Baca ¶¶ 5-8 ("Baca Aff.") (Doc. No. 48 Ex. A).

In connection with her employment at – and firing from – Miratek, Lawler presents two sets of tort claims – employment discrimination claims arising under the Texas Commission of Human Rights Act ("TCHRA"), TEX. LAB. CODE § 21.001 *et seq*., and defamation claims arising under Texas common law. *See* Pl.'s Orig. Pet. 8-14. In order to determine whether this Court has subject matter jurisdiction over these claims, it must determine whether or not they arose on federal enclaves. *See Durham*, 445 F.3d at 1250. Thus, the issue here concerns which of these two locations – the Miratek headquarters building at 8201 Lockheed, or the hazardous waste facility on Fort Bliss – was the place in which Lawler's various claims arose. As the Court finds that some of these claims arose on the enclave while others did not, the Court will also address the question of whether to exercise supplemental jurisdiction over the non-federal claims or whether to split the case.

### 1. Lawler's TCHRA claims

The Court must decide whether Lawler's TCHRA claims, sounding in employment discrimination, arose on the Fort Bliss federal enclave, or whether they arose outside that enclave. Only if they arose inside the enclave would this Court have subject matter jurisdiction over them under the federal enclave theory. As discussed below, the Court finds that these claims did not arise on the Fort Bliss federal enclave, and that federal enclave jurisdiction is therefore unavailable over them.

The Court first observes that there appears to be very little Texas precedent on the subject of determining the exact geographical location at which an employment discrimination claim

may be said to arise; accordingly, the Court will turn to related areas of federal jurisprudence to analyze this issue. *See Rodriguez v. Flitertek*, 518 F. Supp. 2d 845, 849 (W.D. Tex. 2007) (holding that federal employment-discrimination law may be used to shed light on TCHRA when on-point state-law precedents are scarce). One context in which courts discuss the question of where an employment discrimination tort actually occurs is in connection with the venue provisions of the Title VII federal employment discrimination laws. *See* 42 U.S.C. § 2000e-5(f)(3) (providing that venue is proper "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed," among other places). Ordinarily, Courts assume that the place where the allegedly unlawful employment practice was committed is simply the place where the aggrieved employee had been working or was seeking work. *See, e.g., March v. ABM Sec. Serv. Inc.*, No. H-09-CV-2422, 2010 WL 104480, at *1 (S.D. Tex. Jan. 7, 2010); *see also Ferguson v. Exelon Nuclear*, No. 09-CV-1237, 2010 WL 107566, at *1 (C.D. Ill. Jan. 7, 2010).

However, when the location of the aggrieved worker's supervisor is different than the location where the worker or prospective worker is situated, courts generally hold that the place where the "unlawful employment practice is alleged to have been committed" is the place where the employer "made the decision" which is the subject of the complaint, not the place where the "effects are felt." *Whipstock v. Raytheon Co.*, No. 2:07-CV-11137, 2007 WL 2318745, at *3 (E.D. Mich. Aug. 10, 2007). Instead of looking to where the worker is located, when "determining where an alleged unlawful employment practice was committed, the Court must look to the place where the decisions and actions concerning the employment practices occurred." *Ifill v. Potter*, No. 05-CV-2320, 2006 WL 3349549, at *2 (D.D.C. Nov. 17, 2006)

(internal citations and quotation marks omitted).

This is true not only in cases where the worker was in some location away from management for private reasons (such as in a failure to hire case, where the worker may feel the effects of the wrongful decision in his or her home state), but also in cases where the employer itself was responsible for sending the worker to the remote location as part of the employee's job duties. *See Hayes v. RCA Serv. Co.*, 546 F. Supp. 661, 663 (D.D.C. 1982) (observing, in that case, that "while the plaintiff does complain of being assigned to routes located in the District of Columbia, the decision to assign those routes was made in Hyattsville, Maryland," and thus the "unlawful employment practice was committed [in Hyattsville]"); *see also Pendleton v. Mukasey*, 552 F. Supp. 2d 14, 19-20 (D.D.C. 2008) (finding that an employment discrimination claim arose in Washington, D.C., when the relevant manager skewed the promotion-selection process by actions he had taken there and made his "final selections" there, even though the aggrieved employee was working in Virginia and conducted many preliminary steps of the application for promotion in Virginia). The cause of action follows the place where the decisions were made, not the place where the employee was or is found – even if it was work that sent the employee to that other location.

Some cases hold that state-law employment discrimination claims brought by civilians working on federal enclaves *do* arise on the enclave in question. *See, e.g., Brookhaven Sci. Assoc. v. Donaldson*, No. 1:04-CV-4013, 2007 WL 2319141 (S.D.N.Y. Aug. 9, 2007). But these do not suggest that state laws depart from the principles stated above; instead, those cases generally involve situations where both the employee's worksite *and* the relevant supervisor or personnel-management office were located within the federal enclave. *See id.* Though the

*Brookhaven* opinion does not discuss it in detail, in that case the management office, as well as the complaining employees' worksites, were all apparently located on the Brookhaven federal enclave. *See* Goldman Decl. ¶ 18, *Brookhaven Sci. Assoc. v. Donaldson*, No. 1:04-CV-4013 (S.D.N.Y. May 5, 2005) ("[T]he land on which B[rookhaven] S[cience] A[ssociates] operated was . . . a federal enclave."). Similarly, in *Taylor v. Lockheed Martin Corp.*, 78 Cal. App. 4th 472 (2000) a California court explicitly found that both the complaining employee's worksite as well as the office of the human resources manager who disciplined him were both located on the Vandenberg federal enclave. *Taylor* 78 Cal. App. 4th at 480-82 (holding that the state-law cause of action for employment discrimination arose on the federal enclave). These cases follow the pattern observed in federal employment law cases – employment discrimination claims often *do* arise at the jobsite, but that is because the supervision, labor management or human resources functions are carried out on-site, not because the jobsite itself is central to the cause of action.[5]

For the foregoing reasons, the Court holds that an employment discrimination claim does

---

[5] An employment discrimination claim sounding in hostile work environment, as opposed to wrongful termination, wrongful failure to promote, or wrongful failure to hire, might plausibly arise on the job site where the hostile environment existed, because more relevant actions actually took place there. On the other hand, the culpability of the employer may be premised on managerial decisions, taken elsewhere, which promoted or failed to reign in the hostile environment, and thus the locus may yet shift back from the jobsite to the seat of management. *See, e.g., Curry v. Dist. of Columbia*, 195 F.3d 654, 659 (D.C. Cir. 1999) ("Our court has long recognized that an employer may be directly liable [in hostile work environment cases] . . . if it knew or should have known of the conduct and failed to take proper remedial action."). Here, the Court finds that the gravamen of Lawler's complaint is wrongful termination, as that charge is repeated in each of her employment discrimination counts and has the most support in the pleadings. *See* Pl.'s Orig. Pet. 4, 9-10, 12. Accordingly, the Court does not need to decide the issue of how to fix the location of a hostile work environment claim.

not arise on a federal enclave where the relevant manager or supervisor made, off of the federal enclave, the decision which led to the unlawful adverse employment action. In this situation, the cause of action does *not* arise in the location where the employee actually carried out his or her particular job duties. Applying this standard to the instant case, it becomes clear that Lawler's claim does not arise on the Fort Bliss federal enclave. Lawler's "actual place of employment" is divided between two separate foci. *See* Jan. 2010 Order 3 (ordering briefing as to Lawler's "actual place of employment"). Her day-to-day functions – managing a hazardous waste facility – were indeed carried out on the grounds of Fort Bliss. *See* Baca Aff. ¶¶ 7-8. But she, in turn, was managed not by an on-site supervisor, as the aggrieved employee in *Talyor* was, but from Miratek's headquarters, where the company's human resources and labor management functions were carried out. *See* Lawler Decl. ¶¶ 4, 6-7. Accordingly, the employment-discrimination misdeeds allegedly committed by Miratek – such as the termination of Lawler's employment for improper reasons – were not committed on a federal enclave, but were committed where its management was located, which is a building outside of Fort Bliss. Federal enclave jurisdiction is therefore unavailable for the employment discrimination claims.

### 2. Lawler's defamation claims

Under Texas law, a claim for defamation "arises when one publishes a false defamatory statement of fact." *Skipper v. Meek*, No. 03-05-00566-CV, 2006 WL 2032527, at *7 (Tex. Ct. App. Jul. 21, 2006). "Defamatory" indicates a statement which has a tendency to "damage a person's reputation, exposing him to public hatred, contempt, ridicule, or financial injury. *See Fields v. Keith*, 174 F. Supp. 2d 464, 473 (N.D. Tex. 2001). A showing of at least negligence, on the part of the publisher, regarding the truth of the statement is also required when the person

defamed is an ordinary, private individual. *Id.* Because a claim for defamation arises upon each act of publication, the Court should look to the place where the defamatory publications were allegedly made in order to determine whether these claims arose from acts committed on a federal enclave. *See Marshall Field Stores, Inc. v. Gardiner*, 859 S.W.2d 391, 394 (Tex. Ct. App. 1993) ("Each distinct publication of slander inflicts an independent injury from which a slander cause of action may arise.").

Lawler makes defamation claims in two counts of her Original Petition, naming Miratek as a corporate entity in one of her defamation counts and eight individual defendants in the other count. *See* Pl.'s Orig. Pet. 13-14. The claim against Miratek appears to proceed on a vicarious liability theory, as Lawler occasionally makes reference to the acts of certain Miratek employees in that count, and does not set forth any particular allegations that the statements at issue were made or adopted in the company's corporate capacity. *See id*. Moreover, the factual averments made in the two counts are very similar. *Id.* Accordingly, for the purposes of determining the location of the tort, both counts of defamation will be discussed together.

As best as can be determined, Lawler's defamation claims arose on Fort Bliss. Of the eight individuals whom she names in her defamation counts, it appears that one worked outside of the enclave and would have possibly had occasion to make defamatory publications on non-federal territory. Specifically, Patty Holguin Lucero, named in a defamation count, is acknowledged by Lawler as working at Miratek headquarters on non-federal territory. *See* Pl's Orig. Pet. 14; *see also* Lawler Decl. ¶ 4. But even so, given that the alleged defamatory statements were intra-corporate and corporate-to-Army in nature, it stands to reason that even off-enclave persons likely published their statements largely or exclusively into the Fort Bliss

enclave, by telephone or by sending written reports. *See generally* Pl.'s Orig. Pet. 3-7; *see also generally* Pl's Resp. to Def. Delgado's Mot. to Dismiss 1-9 (Doc. No. 16). Regarding the other seven individual defamation defendants, there is no reason to believe that their alleged acts of defamation took place anywhere other than the federal enclave on which they all worked. Accordingly, the Court concludes that Lawler's defamation claims arose within the Fort Bliss federal enclave, and, as such, federal enclave jurisdiction properly lies over them.

C. **Supplemental Jurisdiction**

Given that some of Lawler's claims arose on the federal enclave, and thus give rise to federal jurisdiction, while others did not arise on the federal enclave, the Court must decide whether to keep jurisdiction over the whole case under a theory of supplemental jurisdiction or whether to split the case and remand the non-federal claims back to the state court from which they were removed.[6] In this particular case, the Court elects to split the claims and remand the

---

[6] While it may appear convenient, in this sort of circumstance, to remand the entire case to state court, the Court finds that this cannot be done. Under Fifth Circuit precedent, federal district courts are without power to remand a federal question claim once removed, even if that claim is clearly secondary to associated state law claims made in a particular case. *Poche v. Texas Air Corps.*, 549 F.3d 999, 1005 (5th Cir. 2008) (interpreting 28 U.S.C. § 1441(c)). While § 1441(c) allows the remand of "all matters in which State law predominates," and in the instant case, somewhat uniquely, even the federal question is substantively a state law matter – because it is a Texas defamation claim federalized by the doctrine of federal enclave jurisdiction – the Court cannot avoid the fact that it is, technically, a federal claim, and the Fifth Circuit has foreclosed the remand of federal claims. *Poche* clearly rejects a reading of § 1441(c) which interprets the phrase "matters in which State law predominates" to mean that entire cases in which state law predominates may be remanded – federal claims included – to state court; instead, only the state law causes of action may be remanded, and the federal court must retain jurisdiction over the related federal claims. *See Poche*, 549 F.3d at 1000-05.

-11-

non-federal TCHRA claims back to state court.

Federal courts have supplemental jurisdiction over state-law claims which, though standing on their own are not within the court's jurisdiction, are closely related to claims over which the court does have original subject matter jurisdiction. *See* 28 U.S.C. § 1367(a). The TCHRA claims, though not subject to this Court's original jurisdiction, arise from the same set of facts which undergird the defamation claims, and are thus subject to supplemental jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) (requiring a "common nucleus of operative fact" for supplemental jurisdiction).

A court may decline to exercise supplemental jurisdiction, though, for any of four reasons. The statute reads in pertinent part:

> A federal district court may decline to exercise supplemental jurisdiction over a claim if
>
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

In the instant case, the Court declines to exercise supplemental jurisdiction over the TCHRA claims under reason (2); namely, that the supplemental claims substantially predominate over the claims over which the court has original jurisdiction. The Court observes that, as a matter of experience, plaintiffs alleging employment discrimination claims will often append supplemental common-law claims to statutory employment discrimination claims, for various reasons, yet the essence of the suit remains an employment claim. *See, e.g., Muniz v. El Paso Marriott*, No. EP-09-CV-274-KC, 2009 WL 4878619 (W.D. Tex. Dec. 8, 2009) (holding that,

for reasons peculiar to Texas common law, a claim for intentional infliction of emotional distress could not be tacked on to an employment discrimination claim; dismissing the emotional distress claim while allowing the central employment claim to proceed on its own). The defamation claims here are secondary to the employment discrimination claims, as evidenced by the fact that when pleading damages, Lawler asks specifically for $300,000 in connection with her "retaliation and discrimination claims" and a million dollars in undifferentiated "punitive damages," but specifies no particular figure for her defamation claims. Pl.'s Orig. Pet. 15. Moreover, Lawler asserts four distinct theories of statutory employment discrimination, but only two overlapping counts of defamation. *See* Pl.'s Orig. Pet. 8-14. Taken together, all this supports the conclusion that the defamation claim is secondary to the dominant employment statutory claim. This satisfies the conditions of 28 U.S.C. § 1367(c)(2) and justifies a discretionary decision to decline supplemental jurisdiction over the predominant claim. *See U.S. Bank v. City of Irving*, No. 3:06-CV-1805, 2007 WL 1073769, at *5 (N.D. Tex. Apr. 5, 2007) (observing that a remand of supplemental-jurisdiction claims is discretionary; citing the additional factors of comity, judicial economy and convenience; severing the state and federal claims in order to remand the former and keep the latter).

At the same time, while the Court may split claims arising from the same nucleus of operative facts, the Court should not split apart claims that are too closely interconnected when remanding part of a case to state court. *See Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 105 (5th Cir. 1996) (holding that claims remanded back to state court after a federal-question removal must be "separate and independent"). The claims must have been close enough for supplemental jurisdiction to even plausibly arise, in order to make use of the supplemental

jurisdiction declining statute, but they must not be too intertwined, which would violate the *Blue Bell* standard.

Lawler's defamation claims meet that balance. They center on statements and occurrences tied to the workplace. *See, e.g.,* Pl's Orig. Pet. 6, 14 (alleging that Miratek employee "Patricia Bayer, acting in the course and scope of her employment with Miratek, published to Vicki Hamilton and others [during a workplace investigation] the statement that Ms. Lawler had committed aided [sic] in theft and dishonesty, including misuse of government employees and property, stealing government time, and nepotism."). But, when compared with her employment discrimination claims, they arise out of separate actions taken by a different group of people. While the employment discrimination claims arise out of actions allegedly taken by management in terminating Lawler's employment, the defamation claims arise out of alleged statements made by non-management employees on the jobsite in the weeks or months before Lawler's employment was terminated. The elements of the two claims are also strikingly different;[7] thus,

---

[7] The elements of a prima facie claim for employment discrimination sounding in retaliation are: (1) that the employee engaged in protected activity; (2) that an adverse employment action was taken; and (3) that there was a causal connection between participation in the protected activity and the adverse employment decision. *See Martinez v. Wilson County*, No. 04-09-233-CV, 2010 WL 114407, at *2 (Tex. Ct. App. Jan. 13, 2010); *see also* Pl.'s Orig. Pet. 10 (asserting a claim for retaliation. The elements of a prima facie claim sounding in gender, age or national origin discrimination are: (1) that the employee was a member of a protected class; (2) that she was qualified for her position; (3) that she was terminated, or suffered adverse action; and (4) she was treated less favorably than similarly situated members of another class. *See Tiner v. Texas Dept. of Transp.*, 294 S.W.3d 390, 393-94 (Tex. Ct. App. 2009); *see also* Pl.'s Orig. Pet. 8-13 (asserting claims for gender, age and national origin discrimination). By contrast, a claim for defamation must show the publication of a false, defamatory statement of fact, with at least negligence on the part of the publisher. *Fields v. Keith*, 174 F. Supp. 2d 464, 473 (N.D. Tex. 2001).

proving one set of claims will require substantially different evidence than proving the other. Accordingly, the TCHRA claims are remanded to state court, while this Court retains the defamation claims.

## III. CONCLUSION

For the reasons set forth above, Lawler's Motion to Remand should be **GRANTED** in part and **DENIED** in part, and the claims in this case should be **SEVERED**. Lawler's TCHRA claims shall be **REMANDED** back to the state court from which they were removed, while her defamation claims shall remain before this Court under federal enclave jurisdiction.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE